UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Confectionery Arts International, LLC,<br><br>                  Plaintiff<br><br>      v.<br><br>CK Products LLC and Central Investment LLC,<br><br>                  Defendants | Civil Action No. 3:16-cv-02015-JBA<br><br><br><br>June 2, 2017 |

**AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Confectionery Arts International, LLC ("CAI") brings this action against Defendants CK Products LLC ("CK") and Central Investment LLC ("CI") and alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1. This is an action for trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1501, et seq., the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, et seq., and/or Connecticut common law.

2. CAI's claims arise out of Defendants' infringement of CAI's registered trademark for DISCO DUST®.

**THE PARTIES**

3. Plaintiff CAI is a Connecticut limited liability company with a place of business at 332 Washington Street, New Britain, CT 06053.

4. Defendant CK is an Ohio limited liability company with a principal place of

business at 6230 Innovation Blvd., Fort Wayne, IN 46818.

5.	Defendant CI is an Ohio limited liability company with a principal place of business at 7265 Kenwood Rd., Suite 240, Cincinnati, OH 45236.

## JURISDICTION AND VENUE

6.	Jurisdiction exists pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

7.	This suit is based on a federal question and statute, namely 15 U.S.C. § 1051 et seq.

8.	In addition, jurisdiction under 28 U.S.C. § 1332 exists because the parties have diversity of citizenship and the matter in controversy exceeds $75,000, exclusive of interest and costs.

9.	Supplemental jurisdiction over the causes of action under state law is proper, as they are substantially related to those causes of action over which the court has original jurisdiction, pursuant to 28 U.S.C. § 1367.

10.	The exercise of personal jurisdiction by this Court over Defendant CK is proper under Connecticut's Long-Arm Statute, Conn. Gen. Stat. § 52-59b(a)(1), because, upon information and belief, CK has transacted business in Connecticut.

11.	Defendant CK is a business-to-business wholesaler that advertises its products through an online catalog on its website, www.ckproducts.com.  In addition to providing instructions for becoming a customer, Defendant CK's website instructs visitors to "Visit 'Find a Retailer' if [they] are unable to become a customer."  Through its "Find a Retailer" hyperlink, CK allows website visitors to locate Connecticut retailers, through which they may purchase CK's product line.

12. Upon information and belief, CK has at least four retailers in Connecticut to which and through which it sells its products.

13. Upon information and belief, CK has sold products under the name DISCO DUST and DISCO GLITTER directly to its Connecticut retailers.

14. CK regularly derives revenue from sales of products, including DISCO GLITTER, into Connecticut.

15. The exercise of personal jurisdiction by this Court over Defendant CI is proper under Connecticut's Long-Arm Statute, Conn. Gen. Stat. § 52-59b(a)(1), because, upon information and belief, CI has transacted business in Connecticut, as owner and operator of its subsidiary, Defendant CK.

16. On its website, www.centralinvestment.com, Defendant CI describes itself as a "company interested in acquiring and operating qualified businesses for the long term," as a "company with significant financial and human resources readily available," and as a "company with over 100 years of experience in manufacturing, distribution, sales and marketing."

17. Since about 1999, Defendant CK and its corporate predecessor have been regular customers of Plaintiff CAI.

18. Since Defendant CI's acquisition of Defendant CK, CAI has regularly and interchangeably worked with personnel from both CK and CI concerning purchases made on behalf of Defendant CK.  Additionally, CAI has received payment for goods delivered to Defendant CK from Defendant CI's offices in Ohio.

19. Upon information and belief, since its acquisition of Defendant CK in 2006, CI has participated in, and directed all aspects of the regular operations, including sales and marketing, of Defendant CK.

20. Upon information and belief, Defendant CI's purchasing managers regularly and interchangeably conduct business and communicate to clients and vendors on behalf of Defendant CK.

21. Upon information and belief, Defendant CI generates substantial revenue for itself from the business activities of Defendant CK.

22. The exercise of personal jurisdiction by this Court over Defendants CK and CI is also proper under Conn. Gen. Stat. § 52-59b(a)(3) because, upon information and belief, Defendants' acts have caused injury in Connecticut to CAI, Defendants should reasonably have expected that their acts would have consequences in Connecticut, and Defendants derive substantial revenue from interstate or international commerce.

23. Defendant CK's unauthorized use in commerce of the mark DISCO DUST and the confusingly similar mark DISCO GLITTER have caused injury to CAI, a Connecticut citizen, and owner of the federally registered mark DISCO DUST®.

24. Upon information and belief, since its acquisition of Defendant CK in 2006, CI has participated in, and directed all aspects of the regular operations, including sales and marketing, of Defendant CK, and therefore, would have been involved in the launch of CK's DISCO DUST product line and the subsequent DISCO GLITTER product line.

25. As Defendant CK and its corporate predecessor have been regular customers of CAI since 1999, Defendant CK and Defendant CI had access to CAI's product catalogs and were aware of CAI's full line of products, including the line of products associated with the mark DISCO DUST®.  Defendants should, therefore, have reasonably expected that Defendant CK's unauthorized use in commerce of the mark DISCO DUST and the confusingly similar mark DISCO GLITTER would have consequences in Connecticut.

26.     On its website, at the "Become a Customer" hyperlink, CK provides an online account application and credit application, and notes that Free Shipping is available on first orders of $200 or more for the "Continental US – lower 48 states only," and that the minimum order for "Non-US Accounts [is] $500/Order."  On other pages of its website, CK provides a toll-free (888) customer service number.  Upon information and belief, therefore, Defendant CK sells wholesale to businesses across the country and internationally, and derives substantial revenue from these sales.

27.     According to its brochure, available as a download from its website, CI is a company that "understand[s] multi-state operations" and on its list of acquisitions includes companies located outside its headquarters in Ohio, including Defendant CK, whose principal place of business is in Indiana.  Upon information and belief, therefore, Defendant CI generates substantial revenue for itself from interstate commerce, including through the business activities of Defendant CK.

28.     . Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the property that is the subject of this action is situated  within the jurisdiction of the District Court of Connecticut, and because pursuant to Conn. Gen. Stat. § 52-59b, Defendants CK and CI are subject to this court's personal jurisdiction with respect to this action.

## THE DISCO DUST® MARK

29.     Plaintiff CAI has for over 17 years been engaged in and continues to be engaged in the development, production, and sale of decorative glitter, candy decorations for cakes, edible cake decorations, and candy sprinkles under the brand name DISCO DUST. CAI has built a large and profitable business in connection therewith.

30.     CAI is the owner of a U.S. Trademark Registration on the Principal Register, Reg.

No. 4,089,733 for the DISCO DUST® mark.  The DISCO DUST® registration is a valid and subsisting registration.  A copy of the Certificate of Registration for the DISCO DUST® mark is attached as Exhibit A.

31. CAI uses the DISCO DUST® mark as a designation of source and quality for its goods.

32. CAI uses the registration symbol ® on its website in connection with the advertising of products sold under the DISCO DUST® brand.

33. By virtue of CAI's extensive use in commerce of the DISCO DUST® brand in connection with its goods, such goods have become well and favorably known to the relevant trade and public under such marks.

## FACTS RELATING TO DEFENDANTS' TORTIOUS CONDUCT

34. Since about 1999, Defendant CK and its corporate predecessor have been customers and competitors of Plaintiff CAI in the wholesale cake and confectionery decorating industry.  Upon information and belief, at least up until the filing of this action, Defendant CK regularly resold products it had purchased from CAI.

35. In 2006, Defendant CK was acquired by Defendant CI.

36. After the acquisition, CAI dealt interchangeably with purchasing personnel from both Defendant CK and Defendant CI, on CK's behalf.

37. Plaintiff CAI began using the mark DISCO DUST in 1999 and registered the mark on the USPTO's Principal Register on Jan. 24, 2012.

38. In the fall of 2016, plaintiff CAI became aware that Defendant CK was advertising and selling decorative glitter, candy decorations for cakes, edible cake decorations, and candy sprinkles under the name DISCO DUST on its website, www.ckproducts.com.

39. At least as early as the fall of 2016, Defendant CK was printing the name DISCO DUST on its product labels.

40. Upon information and belief, in its role as owner and operator of CK, Defendant CI directed the introduction, sale, advertising and promotion of CK's DISCO DUST line of products.

41. The product that Defendant CK was advertising and selling under the name DISCO DUST was not purchased from, nor did it originate from, CAI.

42. Neither Defendant CK nor Defendant CI has ever purchased products sold under the mark DISCO DUST® from CAI.

43. Upon information and belief, Defendant CK used the name DISCO DUST for goods commercially related to Plaintiff CAI's DISCO DUST® line, and marketed and sold to the same class of consumers, namely retailers in the cake and confectionery decorating industry, and in the same channels of trade as Plaintiff CAI.

44. Upon information and belief, Defendant CK sold its DISCO DUST line of products through eBay and Amazon.com.

45. Upon information and belief, Defendant CK sold DISCO DUST to consumers in Connecticut.

46. As DISCO DUST® is a federally registered trademark, Defendants CK and CI were under constructive notice that using the mark without consent of the owner amounted to infringement of Plaintiff CAI's exclusive rights in the mark.

47. On September 14, 2016, CAI sent a letter to Defendant CK informing it of its infringement of the DISCO DUST® mark and offering to sell DISCO DUST® products to CK with consent to use the mark in connections with those products.

48. On October 19, 2016, after receiving no response from Defendant CK, CAI sent a second letter about CK's infringement and requested a response by November 1, 2016.

49. Upon information and belief, Defendant CK continued to use the mark DISCO DUST on its website and its labels until at least October 19, 2016.

50. On October 20, 2016, a purchasing supervisor for Defendant CK contacted CAI by email notifying CAI that CK "would like to bring in [its] rainbow and gold disco dust," and asking that CAI "provide cost, lead time, minimum order quantity, UPC and how many of these come in a package."

51. On or about October 25, 2016, Defendant CK published a press release on its website, www.ckproducts.com, entitled "Disco Glitter," stating "Disco Dust® has a new name! Disco Glitter is the same product – now with a new name! Check it out now and order your favorite color. / Take a look…/ Disco Dust ® is a registered trademark of Confectionary Arts, Inc. [sic]."

52. On November 3, 2016, Defendant CK filed an application for trademark registration, Ser. No. 87224765, with the U.S.P.T.O. for the mark DISCO GLITTER for goods and services described as "an extra fine glitter containing non-toxic ingredients for use in decorating crafts and display-only foods that not for human consumption," with a first use in commerce date of October 24, 2016.

53. On or before November 15, 2016, a purchasing manager from Defendant CI contacted CAI's principal by telephone to inform CAI that Defendant CK had changed its product name from Disco Dust to Disco Glitter.

54. On November 15, 2016, Plaintiff CAI responded to Defendant CI by email informing CI that the name "Disco Glitter" was "too similar to Disco Dust" and again offering

consent to use the registered mark with the purchase of product.

55. On November 16, 2016, CI responded by email through its purchasing manager to CAI: "We respectfully disagree that the name is too similar to Disco Dust."

56. Upon information and belief, in its role as owner and operator of Defendant CK, Defendant CI directed the rebranding of Defendant CK's DISCO DUST line of products under the name DISCO GLITTER.

57. After introducing DISCO GLITTER in October 2016, Defendant CK used, and continues to use, the following wording on its label: "Disco Glitter/ (comparable to Disco Dust®)/ For decorative arts & crafts/ Disco Dust® is a registered trademark/ of Confectionary Arts, Inc. [sic]/ www.CKproducts.com."

58. Upon information and belief, Defendant CK uses the same UPC number for its new DISCO GLITTER products as it did for its DISCO DUST products.

59. Upon information and belief, Defendant CK has sold and continues to sell DISCO GLITTER to consumers in Connecticut.

60. Upon information and belief, Defendant CK sold and continues to sell its DISCO GLITTER line of products through eBay and Amazon.com.

61. The mark DISCO GLITTER is confusing similar to the mark DISCO DUST®, especially considering the manner in which CK has chosen to package and advertise its DISCO GLITTER line of products.

62. Upon information and belief, Defendant CK uses the mark DISCO GLITTER for goods commercially related to Plaintiff CAI's DISCO DUST® line, and markets and sells to the same class of consumers, namely retailers in the cake and confectionery decorating industry, and in the same channels of trade as Plaintiff CAI.

63. The similarity between the marks DISCO GLITTER and DISCO DUST ® is likely to cause confusion, mistake, and/or deceive purchasers, potential purchasers, and the relevant public and trade at the time of purchase, as well as post purchase, as to the source or sponsorship or approval of the DISCO GLITTER line of products, and/or as to its affiliation with CAI, thereby causing harm to CAI's reputation and good will.

64. CK has designed and marketed its DISCO GLITTER line of products in a manner that causes purchasers, potential purchasers, and the relevant public to associate its DISCO GLITTER line of products t with the DISCO DUST® brand products sold by CAI, thereby causing confusion as to the source or sponsorship or approval of the DISCO GLITTER line of products.

65. Upon information and belief, the sale of its DISCO DUST and DISCO GLITTER lines of products by Defendant CK has diminished the value of the DISCO DUST® in the marketplace.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

66. The factual allegations in the foregoing paragraphs are incorporated herein by reference.

67. Defendants' unauthorized use in commerce of the mark DISCO DUST® in the manner set forth above constitutes the use of a registered mark and a reproduction, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution and advertising in a manner likely to cause confusion, deception and mistake.

68. Defendants' unauthorized use in commerce of the DISCO DUST® mark also constitutes a copy or counterfeit of a registered mark in connection with the sale, offering for sale, distribution and advertising of goods in a manner likely to cause confusion, deception and

mistake.

69. Defendants' use in commerce of the DISCO GLITTER mark constitutes the imitation and use of a colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, and advertising of goods in a manner likely to cause confusion, deception and mistake.

70. Defendants have knowingly, intentionally, deliberately and willfully sought to trade on CAI's reputation and the reputation of the DISCO DUST® products through their unauthorized use of the DISCO DUST® mark,

71. CAI placed Defendants on notice of infringement and other unlawful conduct at least as early as September 2016. Defendants simply changed the name of their product line from DISCO DUST to DISCO GLITTER, but have failed to terminate their tortious conduct.

72. The foregoing acts of Defendants constitute knowing, intentional, willful and deliberate infringement of CAI's federally registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(a).

73. CAI has a substantial likelihood of success stemming from a demonstrably clear legal right and Defendants' acts have caused and will continue to cause irreparable injury to CAI for which CAI has no adequate remedy at law.

74. Pursuant to 15 U.S.C. § 1116(a), CAI is entitled to preliminary and permanent injunctive relief to prevent Defendants' continued use of the DISCO GLITTER and/or DISCO DUST mark in commerce.

75. Pursuant to 15 U.S.C. § 1117(a), CAI is entitled to damages, an accounting of profits made by Defendants' use, and recovery of CAI's costs of this action.

76. The intentional, knowing, deliberate and willful use by Defendants of CAI's

federally registered DISCO DUST® mark makes this an exceptional case entitling CAI to an award of three times its actual damages and recovery of reasonable attorneys' fees.

77. The intentional, knowing, deliberate and willful use by Defendants of the confusingly similar DISCO GLITTER mark makes this an exceptional case entitling CAI to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

78. CAI is also entitled to prejudgment interest on its recovery.

**COUNT II: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND FALSE OR MISLEADING REPRESENTATION OF FACT**

79. The factual allegations in the foregoing paragraphs are incorporated herein by reference.

80. The DISCO DUST® mark is both inherently distinctive and has acquired secondary meaning as a source of CAI's products through substantial, exclusive and continuous use. By reason of CAI's continuous and exclusive use of the DISCO DUST® brand, the DISCO DUST® brand indicates to the consuming public that there is a single and well-known source of the DISCO DUST® brand products.

81. Defendants' unauthorized use in commerce of the DISCO DUST® mark in the manner set forth above is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of CK with CAI and its DISCO DUST® brand and creates the misleading impression that CK's use of the DISCO DUST® was with the sponsorship or approval of CAI or that the origin of the goods sold by CK emanated from CAI.

82. Defendants' use of the DISCO GLITTER mark constitutes use in commerce of a term which is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of CK's DISCO GLITTER mark with CAI's DISCO DUST brand.

83. Additionally, Defendants' use of the DISCO DUST mark in the context of the

advertising and promotion of DISCO GLITTER is a false or misleading representation of fact which is likely to cause confusion, mistake or deception as to the affiliation, connection, and association of CK's products with CAI's DISCO DUST® brand. Additionally, Defendants' use of CAI's DISCO DUST® mark in commercial advertising and promotion of DISCO GLITTER misrepresents the nature, characteristics, and qualities of both CAI's DISCO DUST brand and CK's DISCO GLITTER mark.

84. Defendants' willfully sought to trade on the reputation of the DISCO DUST® products by deliberately and intentionally using the DISCO DUST® mark in such a way as to cause confusion as to sponsorship, endorsement, affiliation, connection or association.

85. CAI has placed Defendants on notice of its unlawful conduct at least as early as September 2016, but Defendants have failed to terminate their wrongful conduct.

86. The foregoing acts of Defendants constitute unfair competition, false designation of origin, and false or misleading representation of fact, respectively, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). CAI has been, and is likely to be, damaged by Defendants' acts of unfair competition, false designation of origin, and false or misleading representation of fact.

87. Plaintiff has a substantial likelihood of success stemming from a demonstrably clear right, and Defendants' acts have caused and will continue to cause irreparable injury to CAI for which CAI has no adequate remedy at law.

88. In addition, Plaintiff seeks damages and an accounting of Defendant's profits resulting from the foregoing, as well as the costs Plaintiff has sustained in bringing this action. Plaintiff further seeks prejudgment interest on its recovery.

**COUNT III: COMMON LAW UNFAIR COMPETITION AND MISAPPROPRIATION**

89. The factual allegations in the foregoing paragraphs are incorporated herein by reference.

90. The foregoing acts of Defendants infringed upon the DISCO DUST® brand, caused dilution of the distinctive quality of the DISCO DUST® brand, and are intended to undermine the uniqueness and distinctiveness of the DISCO DUST®, constituting unfair competition and misappropriation of CAI's goodwill under the common law of the state of Connecticut and other states.

91. Defendants' acts of unfair competition and misappropriation entitle CAI to recover its damages and costs of this action, together with an accounting of profits made by Defendants on sales of products connected with CK's use of DISCO DUST and DISCO GLITTER.

92. The acts of Defendants have been malicious and deliberately calculated to injure CAI and its DISCO DUST® brand.

93. The willful, wanton and malicious nature of Defendants' conduct entitles CAI to an award of its reasonable attorneys' fees and punitive damages.

94. Defendants' infringement and unauthorized use of the DISCO DUST® brand is causing irreparable injury to CAI's goodwill, and unless enjoined by this Court, will continue to do so.

95. Further, CAI may not have an adequate legal remedy in the event money damages cannot properly be calculated.

96. Under the common law of the State of Connecticut, CAI is entitled to preliminary and permanent injunctive relieve to prevent Defendants' continuing unfair competition.

## COUNT IV: UNFAIR COMPETITION AND TRADE PRACTICES UNDER THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

97. The factual allegations in the foregoing paragraphs are incorporated herein by reference.

98. By engaging in the acts alleged above, Defendants have engaged in conduct that: (a) is offensive to public policy, governing statutes, common law principles, and/or established concepts of fairness, and/or (b) is unethical and unscrupulous, and (c) has caused substantial injury to consumers and CAI, Defendants' direct competitor. Defendants committed such acts, and continue to commit such acts, in the conduct of trade or commerce.

99. Defendants' conduct amounts to a violation of the Connecticut Unfair Trade Practices Act, Conn, Gen. Stat. § 42-110a, et seq., and has resulted in damage and ascertainable loss to CAI, as well as irreparable harm.

100. Upon information and belief, the complained of activities were undertaken by Defendants in disregard of CAI's rights and of the law.

101. Plaintiff has a substantial likelihood of success stemming from a demonstrably clear right, and Defendants' acts have caused and will continue to cause irreparable injury to CAI for which CAI has no adequate remedy at law. In addition, Plaintiff seeks damages as a result of Defendants' unfair trade practices, including punitive damages.

## PRAYER

WHEREFORE, Plaintiffs pray that:

A. CK and CI be held liable under each claim for relief as set forth in this Complaint.

B. The Court preliminarily and permanently enjoin Defendants, their parents, subsidiaries and affiliated companies, their respective officers, agents, servants, employees,

dealers, licensees, and attorneys and those persons in active concert or participation with them from using the DISCO DUST® brand, DISCO GLITTER, or any device confusingly similar thereto or dilutive thereof, and from using, affixing, offering for sale, advertising, promoting goods or services in the configuration currently used for the infringing product lines or any configuration substantially similar thereto;

  C. The Court preliminarily and permanently enjoin Defendants, their parents, subsidiaries and affiliated companies, their respective officers, agents, servants, employees, dealers, licensees, and attorneys and those persons in active concert or participation with them from using any false descriptions or representations, or any false designation of origin, or from otherwise committing any acts of unfair competition in connection with the DISCO DUST® brand.

  D. The Court preliminarily and permanently enjoin Defendants, their parents, subsidiaries and affiliated companies, their respective officers, agents, servants, employees, dealers, licensees, and attorneys and those persons in active concert or participation with them from diluting the DISCO DUST® brand.

  E. The Court award CAI damages, including, inter alia, disgorged profits or a reasonable royalty, and punitive damages, in an amount to be proven at trial, together with prejudgment interest and trebled pursuant to 15 U.S. C. § 1117(b);

  F. Defendants be required to pay to CAI its reasonable attorneys' fees and disbursements incurred herein, pursuant to 15 U.S.C. § 1117 and the equity powers of the Court.

  G. Defendants be required to pay to CAI its costs in bringing this action.

  H. Award CAI any such other and further relief as the Court deems just and proper given the facts and the circumstances herein.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CAI hereby demands trial by jury in this action of all issues triable by jury.

This 2nd day of June, 2017.

                                              Respectfully submitted,

                                              /s/ Nike V. Agman
                                              Nike V. Agman, Bar No.  ct28172
                                              Law Office of Nike V. Agman
                                              360 Bloomfield Avenue, Suite 301
                                              Windsor, CT 06095
                                              Tel: (860) 607-3237
                                              Fax: (860) 607-3201
                                              nike.agman@comcast.net

                                              Daniel R. Cooper, Bar No. ct30240
                                              Cooper & Kurz
                                              170 Eden Road
                                              Stamford, CT 06907
                                              Tel: 203.322.4852
                                              Fax: 203.329.7881
                                              kurzcooper@att.net

                                              *Attorneys for Plaintiff Confectionery Arts International, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 2, 2017, a copy of the foregoing Amended Complaint and Jury Demand was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Nike V. Agman
Nike V. Agman, Bar No. ct28172
Law Office of Nike V. Agman
360 Bloomfield Avenue, Suite 301
Windsor, CT 06095
Tel: (860) 607-3237
Fax: (860) 607-3201
nike.agman@comcast.net