UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Confectionery Arts International, LLC** )<br>)<br>**Plaintiff,** )<br>v. )<br>**CK Products LLC and Central Investment** )<br>**LLC** )<br>**Defendants.** ) | CASE NO. 3:16-cv-02015-JBA<br><br>Judge Janet Bond Arterton |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

I. **EXERCISING PERSONAL JURISDICTION OVER CENTRAL INVESTMENT LLC ("CI") WOULD VIOLATE DUE PROCESS**

   a. **Plaintiff Confectionery Arts International, LLC ("CAI") fails to demonstrate that CI "controls" CK Products LLC's ("CKP") (CKP and CI collectively, "Defendants") sale of the disco dust product into Connecticut**

In order to demonstrate the Court's specific jurisdiction over CI, CAI is required to demonstrate that CI sold the purportedly infringing disco dust product into Connecticut—the activities giving rise to its causes of action.[1] CAI offers **no evidence** to refute that CI and CKP are separate business entities found in different states, CI engages in different business activities altogether from CKP,[2] and, most importantly, CI does not sell the disco dust product.

Unable to offer that evidence, CAI is relegated to arguing that CI somehow "controls" CKP's sale of the disco dust product because it is allegedly involved in CKP's day-to-day operations. (Memorandum Contra ("Memo."), p. 9). However, in its memorandum contra, CAI offers no evidence demonstrating CI's control of CKP's day-to-day operations or sale of the

---

[1] *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Defendants also incorporate their arguments in their motion to dismiss. To the extent CAI relies upon *Zartolas v. Nisenfeld,* 184 Conn. 471 (1981), that case only stood for the limited proposition that a "transaction of business" under Connecticut's long-arm statute included the execution of a warranty deed that was the basis of the plaintiff's claim. In contrast, CAI speculates, without compelling evidence, that CI controlled the sale of the disco dust product, as explained herein.
[2] CAI's assertion that because CI states that it has "significant financial and human resources readily available" on its website, it must control CKP is mere speculation and unsubstantiated.

1

disco dust product. Indeed, CAI is relegated to basing its allegations of "control" upon **two interactions** it had with CI's Patrick Kenney ("Kenney"): first, one relating to a wholly unconnected cease and desist letter regarding Tylose Powder[3] and, second, e-mails regarding CKP's denial of liability in this dispute. (Memo., pp. 10-11, Ex. 2). Even when viewed in a manner most favorable to CAI, these events do not demonstrate that CI "entirely dominates"[4] CKP's finances, business activities, and sales. In any event, Kenney's interactions were not examples of CI's "control" but, rather, discrete paid-for services that CI provided to, and performed on the behalf of, CKP. (Declaration of William P. Martin, II ("Martin Decl."), ¶¶ 23-28). Indeed, CI is not involved in any of CKP's day-to-day activities (*Id.*, ¶ 18), whether regarding CKP's sale of the disco dust product or otherwise.[5]

Having failed to demonstrate that CI "controls" CKP's sales, CAI also fails to demonstrate how the Court's exercising of personal jurisdiction over CI, based upon CKP's actions, will satisfy constitutional Due Process concerns.

### b. CAI also fails to demonstrate "minimum contacts" with Connecticut through sales.

The level of sales of a seller of products or services into a given jurisdiction are determinative as to whether it has minimum contacts with that jurisdiction. *See, e.g., Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102 (1987); *see also* Mot. to Dismiss, pp. 15-19. In this regard, CAI fails to directly address the insufficient, *de minimus* percentage of disco dust product sold into Connecticut.[6] CAI fails to address altogether that the

---

[3] To the extent CAI claims that Kenney's e-mail signature as "Purchasing Manager" discredits William P. Martin, II's ("Martin") declaration (Memo., p. 10), this argument fails. Kenney provided purchasing management services in the unrelated Tylose Powder dispute to prevent CKP's loss of inventory or money as a result of CAI's alleged trademark infringement of the Tylose Powder product. CAI offers no evidence that Kenney was a "purchasing agent" for CKP's purchase or sale of the disco dust product at issue.
[4] *See* the cases cited in Defendants' Motion to Dismiss ("Mot. to Dismiss"), pp. 9-12.
[5] CAI leaps to the unsubstantiated conclusion that CKP "relies heavily on management at Defendant CI to handle all issues relating to trademark." (Memo., p.16). The pertinent issue is whether CI controlled CKP's sales activities.
[6] The lack of personal jurisdiction as to CKP based upon these *de minimus* sales is discussed below, in section II.

purported harm caused by those sales occurred where they were made and where CAI lost business—more than 99% of those sales occurred outside of Connecticut. *See Evergreen Media Holdings, LLC v. Warren*, 105 F.Supp.3d 192, 199 (D.Conn. 2015); (Martin Decl., ¶¶ 43-44). Thus, even assuming CI "controlled" CKP's sales of the disco dust product, CAI is still unable to prove that the Court's exercising personal jurisdiction over CI will satisfy Due Process concerns in light of the insignificant sales into, and the resulting lack of minimum contacts with, Connecticut.[7]

## II. EXERCISING PERSONAL JURISDICTION OVER CKP WOULD ALSO VIOLATE DUE PROCESS.[8]

### a. CAI fails to refute the evidence of CKP's *de minimus* sales into Connecticut and, as a result, fails to prove CKP's "minimum contacts" with Connecticut

As stated in detail above and in Defendants' motion to dismiss, CAI does not address or refute the indisputable fact that CKP's sales of the disco dust product into Connecticut are insignificant and *de minimus*. (Martin Decl., ¶¶ 43-45; Memo., pp. 14-15). These insignificant sales of disco dust product into Connecticut, along with the fact that CKP does not control the resale of any disco dust product that may make its way into Connecticut (Martin Decl., ¶ 37), demonstrate that CKP does not have the sufficient minimum contacts with Connecticut required for this Court to exercise personal jurisdiction over it.[9]

### b. Contrary to CAI's assertion, CKP's website is not "active" and does not demonstrate "purposeful availment" into Connecticut.

---

[7] To the extent CAI asserts that the Court has personal jurisdiction over CI under the Connecticut long-arm statute because CI "should have known" that CKP's actions would have an "effect" in Connecticut, this argument does not obviate CAI's need to demonstrate that CI "controlled" CKP's sales. Indeed, under CAI's construction of Connecticut's long-arm statute, any parent of a subsidiary making sales in Connecticut should "expect" to be hailed into this state.

[8] CAI concedes that general jurisdiction does not apply in this instance. (Memo., pp. 13-14).

[9] CAI's assertion that CKP has data about sales into Connecticut and, thus, must be targeting or maintaining lasting relationships with customers in Connecticut is mere speculation. (Memo., pp. 14-15). CKP tracks sales data but does not target customers; customers initiate purchases with CKP. (Martin Decl., ¶¶ 31, 41).

To the extent CAI attempts to demonstrate CKP's "purposeful availment" toward Connecticut through CKP's website, CAI's assertions are without merit. In its memorandum contra, CAI mischaracterizes what constitutes an "active" website, as described in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997). A website requires the **knowing and repeated transmission of information** between a defendant and its customer to demonstrate purposeful availment and to be "active." *Id.*, 1123-24. In this regard, CKP does not engage in such "knowing and repeated transmissions" with users of its website. The website does not have direct, online interaction with customers—such as a live chat or a message board—and CKP does not reach out to its customers through its website. (Martin Decl., ¶ 32, 35). Moreover, CKP does not conduct any interactive follow-up or communications with its customers from the website after the customers have purchased CKP's products. (*Id.*, ¶ 37).

To the extent customers register and order product from CKP's website,[10] they do so at their volition and registrations and placed orders are reviewed at CKP's offices, not through any interactive process on the website with customers. (*Id.*, ¶¶ 30-31, 35-36, 39). Indeed, all sales from CKP's website are initiated by customers and CKP does not specifically target customers through its website, as stated above. (*Id.*, ¶¶ 31, 41).

Nor does the website's "find a retailer" function constitute the kind of "active," "knowing and repeated transmission of information" contemplated by *Zippo*, and CAI does not cite other authority to support this argument. This function only displays retailers that purchased CKP products at some point in time but does not specify whether they still carry CKP products, what those products may be, or if the retailers are repeat purchasers. (Martin Decl., ¶¶ 38-40). Finally, and mindful of CAI's concession that non-"active," "passive" websites are akin to

---

[10] CAI offers no evidence of the volume of sales into Connecticut from CKP's website or evidence that it has purchased a test product from CKP's website. CAI also fails to authenticate its examples of webpages from CKP's website.

advertisements, the "find a retailer" function and any product listings on CKP's website are much closer to advertising than the kind of "active" live messaging and message board functioning required to demonstrate purposeful availment through a website. CKP's website is not "active," is closer to "passive," and CAI cannot demonstrate CKP's purposeful availment into Connecticut through it.

### c. CAI misconstrues *Calder v. Jones*; the mere assertion of an intentional tort does not obviate the requirement of Defendants' "minimum contacts" with Connecticut.

CAI appears to be arguing that its mere assertion of an intentional tort claim warrants the Court's personal jurisdiction over Defendants by itself, even if Defendants have no other contacts with Connecticut. (Memo., pp. 18-20). CAI is simply wrong. As the United States Supreme Court held in *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014), the "minimum contact" requirements also apply when intentional torts are involved:

> Due process requires that a defendant be haled (sic) into court in a forum State **based on his own affiliation** with the State . . . . **These same principles apply when intentional torts are involved** (emphasis added).

In so holding, the Supreme Court dismissed a case for lack of personal jurisdiction from the District of Nevada, even though defendant's actions were directed toward plaintiffs located in Nevada, because the defendant lacked "minimal contacts" with Nevada—**directly contradicting** what CAI asserts is the law in its memorandum contra. *Id.,* 1124. In fact, the *Walden* Court re-analyzed its *Calder* decision and emphasized that it also focused upon **defendant's contacts with the forum**. *Id.*, 1115. CAI simply misreads and misapplies *Calder*.[11]

Based upon all of the foregoing arguments and all of those in its motion, Defendants' motion to dismiss for lack of personal jurisdiction as to CKP should also be granted.

---

[11] To the extent CAI also relies upon *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir. 1994), this case has been abrogated by *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), based upon *Walden*.

### III. THE MOTION TO DISMISS FOR LACK OF IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE SHOULD ALSO BE GRANTED.

**a. As the Court does not have personal jurisdiction over Defendants, this District is not a proper venue.**

CAI concedes that that proper venue in this District is entirely dependent upon a determination of personal jurisdiction over Defendants. (Memo., p. 22). However, as explained above and in Defendants' motion to dismiss, the Court does not have personal jurisdiction over either Defendant. For this reason, Defendants' motion to dismiss for lack of proper venue should be granted.

**b. Even assuming proper venue in this District, CAI fails to properly analyze the venue factors, which favor transfer to either the Southern District of Ohio or the Northern District of Indiana.**

**i. The "loci of events" giving rise to this lawsuit occurred outside of this District, weighing in favor of transfer.**

A plaintiff's choice of forum carries little weight without concrete connection to its chosen district and its choice of forum receives less deference when the loci of operative facts is found in another district. *Aronstein v. Thompson Creek Metals Co.*, No. 3:14-cv-00201 (MPS), 2015 WL 235186, at *3 (D.Conn. Jan. 16, 2015); *Open Solutions Inc. v. Granite Credit Union*, No. 3:12–CV–1353 (RNC), 2013 WL 5435105, at *4 (D.Conn. Sept. 29, 2013); *Nieves v. Am. Airlines,* 700 F.Supp. 769, 772 (S.D.N.Y.1988) (plaintiff's choice is given reduced emphasis when "operative facts upon which the litigation is brought bear little material connection to the chosen forum"). In its memorandum contra, CAI fails to demonstrate how the loci of events relating to CKP's sale of the disco dust product occurred in this District.

As also stated above, CAI fails to even address that the harm caused by sale of the disco dust product is located where those sales occurred and where it purportedly lost business[12]—and

---

[12] *See Evergreen Media Holdings, LLC*, 105 F.Supp.3d at 199 (stating "the situs of a commercial injury is generally

over 99% of those sales occurred outside of Connecticut. (Martin Decl., ¶¶ 43-44). CAI also fails to address that CI has no physical connection whatsoever with this District (*Id*., ¶¶ 3-7). CI's members, officers, corporate assets, and real property are all indisputably outside of this District. And to the extent that CAI asserts that CI should be held accountable for CKP's sales due to its alleged "control" over CAI, **none** of that control occurred in Connecticut and, even assuming that control actually occurred, it would occur in the Southern District of Ohio and the Northern District of Indiana, not in this District.

CAI also fails to address the fact that CKP's production and distribution facility, its corporate offices, its employees, and its corporate assets, and sales activities are all located in and generated from the Northern District of Indiana, not this District. *Id.*, ¶¶ 9, 11. The manufacturing, selling, processing, and shipping of the purportedly infringing disco dust product—and the witnesses who can testify as to these facts—are out of CKP's facilities, located in the Northern District of Indiana.

   ii.   **The location of relevant documents and the ease of access is still a venue factor afforded weight and, because most sources are located at Defendants' corporate offices, this factor favors transfer of venue.**

In *Aronstein v. Thompson Creek Metals Co.*, the District Court of Connecticut found that "the location of documents and ease of access" factor favored a transfer of venue from this District. 2015 WL 235186 at *5. The Court recognized that because the defendant was located in Colorado, the "sources of proof" relating to its activities were likely to be located there, not in this District. *Id.* Similarly, in this case, the "sources of proof" relating to CKP's processing, sale, and distribution of the disco dust product are not located in this District but, rather, at CKP's office, processing, and distribution centers. (Martin Decl., ¶¶ 9, 30-31). Likewise, sources of

---

where the plaintiff experiences a loss of business, not where the plaintiff resides, despite the fact that the plaintiff may, while in his home state, subsequently feel the economic impact of the lost business") (citation omitted).

7

proof relating to CI, Martin, and Kenney, discussed above and below, are all located in the Southern District of Ohio. (*Id.*, ¶¶ 1-7, 14-29).

Unable to refute this evidence, CAI resorts to asserting that this factor should be disregarded altogether.[13] As demonstrated in *Aronstein*, CAI's assertion is incorrect and this factor also weighs in favor of transfer of venue.

### iii. The number of parties and witnesses outside of this District exceed those located in this District and the scope of their testimony is broader.

In determining whether parties and witnesses will be inconvenienced by a plaintiff's chosen venue, a court factors the number of witnesses that will testify and the substance of that testimony. *See, e.g., Aronstein*, 2015 WL 235186 at *3. In this regard, Defendants' motion to dismiss **and even CAI's own memorandum contra** highlight that the most important witnesses who are able discuss CKP's sale of disco dust product are **Defendants' witnesses**—all of whom are located outside of this District.

CI's Vice President, General Counsel, and Secretary Martin—located within the Southern District of Ohio—is able to testify regarding CI's ownership of CKP and CI's lack of sales of the purportedly infringing disco dust product. (Martin Decl., ¶¶ 15-16, 18). Moreover, Martin is able to offer general testimony on CKP, which CI possesses by virtue of being an equity stakeholder in CKP. (*Id.*, ¶ 15).

Indeed, the affidavit of CAI's own witness, Mark Czerczak, reveals the importance of Defendants' witnesses and confirms that Defendants' witnesses outnumber CAI's witnesses. Czerczak discusses CI's Kenney—located in the Southern District of Ohio—in the context of CKP's sale of the disco dust product under the DISCO GLITTER brand. (Affidavit of Mark

---

[13] CAI quotes *Charter Oak Fire Ins. Co. v. Broan-Nuton, LLC*, 294 F.Supp.2d 218 (D.Conn. 2003) in a self-serving manner. This case states **that this factor is entitled to some weight** but acknowledges that modern photocopying technology and electronic storage may deprive this factor of some weight.

Czerczak, ¶¶ 15-22, 28-30) Czerczak further discusses CKP's Purchasing Agent, Maureen Lund—located in the Northern District of Indiana—and her alleged request to purchase the disco dust product from CAI. (*Id.*, ¶¶ 27, 29-30). Czerczak does not discuss **any** CAI witnesses, evidencing the relative importance of Defendants' employees, officers, and witnesses—all of whom are located outside of this District. This factor also favors the transfer of venue.

  **iv.**  **The Southern District of Ohio and the Northern District of Indiana can apply the Connecticut Unfair Trade Practices Act ("CUTPA").**

  The possibility of another state jurisdiction's law governing over a case is accorded little weight in a motion to transfer venue analysis, especially when no complex questions of foreign law are involved. *Aronstein*, 2015 WL 235186 at *5, *citing Morgan Guar. Trust Co. of New York v. Tisdale,* No. 95 CIV. 8023(BSJ), 1996 WL 544240, at *7 (S.D.N.Y. Sept. 25, 1996). Federal courts often apply laws foreign to the law of their particular state. *Pitney Bowes, Inc. v. Nat'l Presort, Inc.,* 33 F.Supp.2d 130, 132 (D.Conn. 1998). CAI's assertion that its CUTPA claim favors venue in this District is without merit and this factor is neutral.

  **v.**  **CAI failed to provide evidence that venue should be maintained in this District because it has less means to litigate than Defendants.**

  In order for a plaintiff to assert that it has lesser means to participate in a lawsuit than a defendant, thereby favoring the venue of its choice, it must present evidence of this lesser means. *See Aronstein*, 2015 WL 235186 at *5. In its memorandum contra, CAI fails to present any evidence of its finances to support the allegation that it has "lesser means" to participate in this lawsuit than Defendants. In fact, CAI is actually maintaining a second, identical trademark infringement lawsuit against Sunflower Sugar Art USA, Inc. in the District of Connecticut, Case No. 3:17-cv-00108-AVC, which belies this point, given the significant costs associated with trademark infringement lawsuits. This venue factor is neutral.

9

**vi.     Trial efficiency and interests of justice favor a transfer of venue.**

The loci of events relating to CKP's sale of the disco dust product, access to proof of those sales, and the important witnesses with knowledge of those sales are not located in this District but, rather, in the Southern District of Ohio and the Northern District of Indiana. For these reasons, a transfer venue to one of these two alternative venues will improve trial efficiency and the interests of justice will be better served. Indeed, CAI's arguments for why venue should be maintained in this District can be succinctly summarized as "because CAI is located here." CAI's argument is not compelling enough to maintain venue in this District and Defendants' motion to transfer venue should be granted.

## CONCLUSION

For all of the reasons in Defendants' motion to dismiss and this reply memorandum, Defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue should be granted.

Respectfully submitted

/s/Philip R. Bautista
Mitchell R. Harris (ct09216)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103-1212
Tel:  (860) 275-0346
Fax:  (860) 275-0343
mharris@daypitney.com

Philip R. Bautista (phv04005) (*pro hac vice)*
Liane H. Rousseau (phv08989) (*pro hac vice*)
Taft Stettinius & Hollister LLP
200 Public Square, Ste. 3500
Cleveland, Ohio 44114
Tel:  (216) 241-2838
Fax:  (216) 241-3707
pbautista@taftlaw.com
lrousseau@taftlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2017, a copy of the foregoing Reply Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Philip R. Bautista
*One of the Attorneys for Defendants*