|  |  |
|---|---|
| CONFECTIONARY ARTS INTERNATIONAL, LLC,<br>    *Plaintiff,*<br>      *v.*<br>CK PRODUCTS LLC and CENTRAL INVESTMENT LLC,<br>    *Defendant.* | Civil No. 3:16cv2015 (JBA)<br><br>March 1, 2018 |

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff, Confectionery Arts International, LLC ("CAI") filed this action against Defendants CKP Products LLC ("CKP") and Central Investment LLC ("CI") on December 9, 2016 alleging trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(a) (Count One), unfair competition, false designation of origin and false or misleading representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count Two), unfair competition and misappropriation in violation of Connecticut common law (Count Three) and unfair competition and trade practices under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a (Count Four). Defendants now move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over both CKP and CI and Fed. R. Civ. P. 12(b)(3) because this Court is not an appropriate venue for Plaintiff's lawsuit under 28 U.S.C. § 1391.[1] (Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mot. to Dismiss") [Doc. # 28] at 1.) For the reasons that follow, Defendants' Motion is granted insofar as it seeks dismissal of CI, but denied in all other respects.

---

[1] In the alternative Defendant argues the venue of the lawsuit should be transferred to either the United States District Court for (1) the Southern District of Ohio or (2) the Northern District of Indiana.

## I. Facts Alleged and Jurisdictional Facts

Plaintiff, a registered Connecticut limited liability company, is a private label manufacturer and wholesaler specializing in the manufacture of a broad spectrum of food products for the retail, food service and industrial markets, which includes the cake and confectionery decorating industry in the state of Connecticut. (Czerczak Aff. [Doc. # 32] ¶ 2.) Plaintiff has been using the trademark DISCO DUST® for a product line of decorative food glitter since 1999. (Am. Compl. ¶ 29; Czerczak Aff. ¶ 4; Ex. A (Trademark Registration) to Def.'s Mot. to Dismiss [Doc. #33-1].) On January 24, 2012, Plaintiff officially registered its DISCO DUST® with the United States Patent and Trademark Office, obtaining Reg. No. 4,089,733. (Am. Compl. ¶ 30; Ex. A to Def.'s Mot. to Dismiss.)

CI is a privately-held, Cincinnati-based limited liability company that manages a portfolio of investments, including directing private equity investments, for the business of its members. (*See* Ex. 1 (Martin Decl.) to Def.'s Mot. to Dismiss [Doc. # 29] ¶ 3.) CI maintains an office in Cincinnati, Ohio and has no offices, corporate assets, or employees in Connecticut. (*Id.* ¶ 5). CKP is a manufacturer and wholesale distributor in the candy making, cake decorating, and commercial baking industries. (*Id.* ¶ 8). CKP maintains an office, production, and distribution facility in Fort Wayne, Indiana. (*Id.* ¶ 9). CKP has no offices, corporate assets, or employees in Connecticut. (*Id.* ¶ 11).

As a wholesale distributor, CKP does not directly deal with any end customer and sells to resellers that, prior to purchasing any CKP products, must demonstrate that they are businesses. (*Id.* ¶¶ 33–35). Typically, the businesses that purchase products from CKP resell them to individual customers or use the products as part of a larger bakery process. (*Id.* ¶ 37). However, CKP does not control the advertising or sales activity of any of its reseller customers. (*Id.* ¶¶ 37, 41). CKP

does not track the resale of its products by any resellers, including those on e-commerce sites like Amazon and eBay. (*Id.* ¶ 37).

CKP maintains a website that allows a user to locate a potential retail reseller of its product. (Martin Decl. ¶ 38). However, this search function does not identify whether a given retailer carries any particular item, let alone the disco dust product at issue in this lawsuit. (*Id.*). CKP does not track any sales from those retail resellers and does not have its own storefronts. (*Id.* ¶ 37). Once a customer registers with CKP, orders can be placed in one of three ways. First, the customer can fax an order request to CKP's office in Indiana. (*Id.* ¶ 36a). Second, the customer can call the Indiana office and speak to a sales representative directly. (*Id.* ¶ 36b). Finally, the customer can place an order through CKP's website. (*Id.* ¶ 36c). CKP manages its website in Indiana and, to the extent that orders are received through its website, CKP processes those orders at the Indiana office. (*Id.* ¶ 30).

In 2005, Defendant CKP was acquired by Defendant CI, an Ohio limited liability company. (Am. Compl. ¶ 19.)[2] At that point, while maintaining its facility in Indiana, Defendant CKP also became an Ohio limited liability company (*Id.* ¶ 4). CKP and CI are separate and distinct limited liability companies. (Martin Decl. ¶ 14). While CI owns equity in CKP, CKP has its own, separate employees that manage CKP's business. (*Id.* ¶ 15). Although CKP's General Manager reports to management at CI periodically, CI is not involved, in any way, with the day-to-day manufacturing and sale processes of CKP. (*Id.* ¶ 16).

---

[2] Defendant CI advertises itself on its website, www.centralinvestment.com, as a hands-on owner/operator of the companies it acquires. (Am. Compl. ¶ 16.) Defendant CI defines itself as a "company interested in acquiring and operating qualified businesses for the long term /…with significant financial and human resources readily available …/ with over 100 years of experience in manufacturing, distribution, sales and marketing." (*Id.*)

Plaintiff has had a business relationship with Defendant CKP, also a wholesaler in the cake and baked goods decorating industry, and its predecessor company, Country Kitchen, since Plaintiff's first year of operation, 1999. (Czerczak Aff. ¶ 7; Am. Compl. ¶¶ 25, 34.) Defendant CKP, from both its Indiana address and its Georgia address, regularly purchased products from Plaintiff, including Tylose powder and gum paste. (Czerczak Aff. ¶¶ 7, 8.) Defendant CKP regularly resold these products to retailers, using Plaintiff's original labeling, indicating Plaintiff as the source. (Czerczak Aff. ¶¶ 8, 9.) Defendant CKP regularly paid for its purchases from Plaintiff with a CKP company check, labeled with Defendant CI's Ohio business address. (Czerczak Aff. ¶ 14.)[3]

In July 2015, Defendant CKP received a trademark cease and desist letter from a German corporation, SE Tylose GmbH & Co. KG about Tylose Powder. (Martin Decl. ¶ 20.) At that point, Plaintiff was contacted by Patrick Kenney, whose email signature identified himself as the "Purchasing Manager" for CI. (Czerczak Aff. ¶¶ 15, 17-21; Ex. B (Email Exchange) to Pl.'s Opp'n [Doc. # 33-2]; Martin Aff. ¶¶ 20-27.).

In September 2016 Plaintiff discovered that Defendant CKP was selling its own brand of decorative glitter under the name Disco Dust. (Am. Compl., ¶¶ 38-45; Czerczak Aff., ¶ 23; Ex. C (Photo of Disco Dust Product) to Pl.'s Opp'n [Doc. # 33-3].) On September 14, 2016, Plaintiff sent a letter to the General Manager of Defendant CKP at its Indiana address informing it of its infringement of Plaintiff's DISCO DUST® trademark with a copy of the federal registration

---

[3] All of CKP's sales of its DISCO GLITTER disco dust products are processed in Fort Wayne, Indiana, not at CI's office in Cincinnati, Ohio. (Martin Decl., ¶ 30). To the extent that any follow-up communication must occur between CKP and a customer, wherever this customer is located, this communication is initiated from CKP's office in Fort Wayne and does not involve CI. (*Id.* ¶ 32).

certificate. (Am. Compl., ¶ 47.) Having received no response, Plaintiff sent a second letter on October 19, 2016. (*Id.* ¶ 48.)

On October 25, 2016, Defendant CKP announced on its website, www.ckproducts.com, that "Disco Dust® has a new name! Disco Glitter is the same product – now with a new name!" and noting that "Disco Dust® is a registered trademark of Confectionary Arts, Inc. [sic]." (*Id.* ¶ 51; Ex. D to Pl.'s Opp'n [Doc. # 33-4].) Defendant CKP labeled its decorative glitter product with "Disco Glitter/ (comparable to Disco Dust®)/ For Decorative arts & crafts/Disco Dust® is a registered trademark/ of Confectionary Arts, Inc./ www.CKproducts.com." (Ex. E to Pl.'s Opp'n [Doc. #33-5].) In November of 2016, Patrick Kenney of CI contacted Plaintiff by telephone with notification that Defendant CPK's Disco Dust product name had been changed to Disco Glitter. (Czerczak Aff. ¶¶ 28, 29; Am. Compl., ¶¶ 53-54.) In response to Plaintiff's assertion that Disco Glitter was still "too similar to Disco Dust," Mr. Kenny responded that "[w]e respectfully disagree that the name is too similar to Disco Dust." (Am. Compl. ¶ 55.)[4]

In 2016, decorative disco dust product sales in Connecticut by CKP– including any sale of DISCO GLITTER – amounted to only 0.6% of the total disco dust product sales nationwide. (Martin Decl. ¶ 43). As of March 31, 2017, CKPS's DISCO GLITTER disco dust product line sales in Connecticut accounted for 1% of total product's sales to CKP's direct customers. (*Id.* ¶ 44). Over the past three years and first three months of 2017, CKP's total revenue from sales of all products into Connecticut is less than 2.5% of total revenue nationwide. (*Id.* ¶ 45).

---

[4] CKP pays CI for what it calls "risk management services" provided by CI employee, Mr. Kenney. (Martin Decl., ¶ 17).

## II. Discussion

### A. Personal Jurisdiction

"'On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.'" *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 138 (D. Conn. 2015) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566–67 (2d Cir. 1996)). In order to survive such a motion, the "plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (internal quotation marks omitted). "In evaluating whether the requisite showing has been made, [courts] construe the pleadings and any supporting materials in the light most favorable to the plaintiff[]." *Id.*

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, the Court applies "the forum state's long-arm statute." *Id.* "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.* at 164.

### 1. *Connecticut Long-Arm Statute*

Connecticut's long-arm statute applicable to non-resident individuals, Section 52-59(b), has also been held to apply to non-resident LLCs. *See Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 559 (D. Conn. 2010); *see also Matthews v. SBA, Inc.*, 149 Conn. App. 513, 544- 52, 555-61 (2014). Plaintiff argues the Court has personal jurisdiction over Defendants under the long-arm statute under subsections (1) and (3) of Section 52-59b of the Connecticut General Statutes, which provide that:

> [A] court may exercise personal jurisdiction over any nonresident individual, . . . who in person or through an agent: (1) Transacts any business within the state . . . [or] (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Conn. Gen. Stat. § 52-59b.

### a. *Transacting Business Within the State Under § 52-59b(1)*

"[U]nder § 52–59b (a)(1), a court possesses personal jurisdiction over a nonresident individual with respect to a cause of action arising from any business transacted in this state by that individual." *Ryan v. Cerullo*, 282 Conn. 109, 118 (2007). The Connecticut Supreme Court has interpreted the phrase "transacts any business within the state" to include "a single purposeful business transaction." *Zartolas v. Nisenfeld*, 440 A.2d 179, 181 (Conn. 1981); *see also*; *Avant Capital Partners, LLC v. Strathmore Dev. Co. Michigan, LLC*, No. 3:12-CV-1194 (VLB), 2013 WL 5435083, at *3 (D. Conn. Sept. 30, 2013). In determining whether a business transaction qualifies as purposeful, courts do not apply a rigid formula but rather balance "public policy, common sense, and the chronology and geography of the relevant factors." *Harris v. Wells*, 832 F. Supp. 31, 34 (D. Conn. 1993) (quoting *Zartolas*, 440 A.2d at 182). Courts are instructed to examine the "nature and quality, rather than the amount of Connecticut contacts to determine whether there was purposeful activity." *Avant Capital Partners, LLC*, 2013 WL 5435083, at *3.

### 1. CKP

Defendants argue that Plaintiff cannot establish the Court's personal jurisdiction over CKP for "transacting business" in Connecticut because less than 0.6% of its decorative glitter disco dust product sales and only 2.5% of its overall sales of all products over the past three and a quarter

years occurred in Connecticut. (Def.'s Mot. to Dismiss at 12.) However, Defendants completely ignore *Zartolas's* "single purposeful business transaction" standard, and at oral argument counsel conceded that under this standard the long arm statute reaches CKP's conduct. Thus, because Plaintiff has established personal jurisdiction over CKP under the long-arm statute, the Court will determine (*infra*) whether personal jurisdiction over CKP also comports with the Due Process Clause of the Constitution. *See Chloe*, 616 F.3d at 163.

### 2. CI

Defendants argue Plaintiff cannot show, under a veil-piercing theory, that CI "controls" CKP such that CKP is a mere "instrument" of CI. Plaintiff asserts that it need not engage in a veil-piercing analysis to determine whether CI meets the "single purposeful business transaction" standard of *Zartolas* because as part of Defendant CI's management and operation of Defendant CKP's business, Defendant CI, through its agent Patrick Kenney, transacted business within the state constituting at least a "single purposeful transaction." (Pl.'s Opp'n at 10 citing (Czerczak Aff. ¶¶ 15, 17-21; Am. Compl. ¶¶ 18, 19, 20, 24, 40; Martin Decl. ¶¶ 20-28; Ex. B).)[5]

Plaintiff relies on the incident involving Patrick Kenney, Purchasing Manager for Defendant CI, in which he contacted Plaintiff about a trademark cease and desist letter that CKP had received from SE Tylose GmbH & Co. KG regarding Plaintiff's Tylose Powder product, and his subsequent negotiation with Plaintiff via telephone and email regarding the return to Plaintiff's facility in New Britain, Connecticut of 8,293 bottles of Tylose Powder product that Defendant CKP had purchased. (Czerczak Aff. ¶¶ 15-18; Martin Decl. ¶¶ 20-23.) CKP thereafter elected to cease

---

[5] To the extent Plaintiff is arguing the veil-piercing theory, as discussed below, Plaintiff has not alleged facts sufficient to establish that CI controls CKP as required under Connecticut law.

purchasing the Tylose Powder from CAI and CAI issued a credit memo for the returned product, which could only be used to purchase other products from CAI. (Czerczak Aff. ¶¶ 17-19; Martin Decl. ¶ 27.) Defendant CKP compensated Defendant CI for the work Mr. Kenney did for CKP. (Martin Decl. ¶¶ 23, 26, 28).

Even assuming, without deciding, that this may constitute a "single purposeful transaction," it is entirely unrelated to the instant cause of action and therefore cannot give rise to jurisdiction over the claims relating to the disco dust products. *See Ryan*, 282 Conn. at 118 ("a court possesses personal jurisdiction over a nonresident individual *with respect to a cause of action arising from* any business transacted in this state by that individual (emphasis added)); *Fischer v. Ulysses Partners, LLC*, No. FSTCV156024901, 2016 WL 921677, at *6 (Conn. Super. Ct. Feb. 11, 2016) (examining "whether the [plaintiff's] cause of action *arose from* the defendants' transaction of business within this state." (emphasis added.)) Thus, the first prong of the long-arm statute does not support jurisdiction over Defendant CI.

### b. *Tortious Act under § 52-59b(a)(3)(B)*

Section 52-59b(a)(3)(B) properly extends to a defendant that "commits a tortious act outside the state causing injury to a person or property within the state . . . if such person or agent … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52-59b(a)(3)(B). Because long-arm jurisdiction over CKP has been found in light of its business transactions in the forum, it is unnecessary to address whether there is also jurisdiction over CKP based upon Plaintiff's intentional tort allegations and therefore only the allegations of tortious conduct as to CI are discussed.

Plaintiff claims that because Defendant CI, through its management and direction of Defendant CKP in decisions concerning CKP's trademark strategy and branding—and its intentional infringement of Plaintiff's mark, caused injury to a person within the State of Connecticut, long arm jurisdiction over CI exists under Section 52-59b(a)(3)(B). Furthermore, Plaintiff asserts that Defendant CI, because of its dealings with Plaintiff on the Tylose Power matter, should have reasonably expected its actions to have consequences for Plaintiff, a resident of Connecticut. (Czerczak Aff. ¶¶ 15; 17-21; Am. Compl. ¶ 25.) Finally, Plaintiff maintains that CI generates substantial revenue for itself from interstate commerce, including through the business activities of Defendant CKP's sales, as evidenced by the brochure available on its website asserting that CI is a company that "understand[s] multi-state operations" and because its list of acquisitions includes companies located outside its headquarters in Ohio, including Defendant CKP, whose principal place of business is in Indiana. (*See* Am. Compl. ¶ 27.)

However, in order for CI to be liable for sales made by CKP, its subsidiary, Plaintiff must pierce the corporate veil of CI. *See Epperson v. Richter*, 2004 WL 2211715 at *10 (D. Conn. Sept. 24, 2004) (quoting *Hoffman Wall Paper Co. v. City of Hartford*, 114 Conn. 531, 535 (1932) ("Courts will disregard the fiction of separate legal entity when a corporation 'is a mere instrumentality or agent of another corporation or individual owning all or most of its stock.'"). Under Connecticut law, there are two theories for disregarding the corporate entity: (1) by showing that the subsidiary is a mere "instrument" of the parent corporation; or (2) by establishing that the independence of the corporations never existed at all or ceased to exist. *See RBC Bearings, Inc. v. Thin Section Bearings, Inc.*, No. 3:05CV00360 (SRU), 2007 WL 2727160, at *1 (D. Conn. Sept. 18, 2007). In order to succeed under either theory, a plaintiff must demonstrate exceptional circumstances—such as a parent company setting up a subsidiary solely as a shell company to evade authorities or

obligations. *See Morales*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *7 (citing *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.*, 187 Conn. 544, 557 (1982)).[6] A plaintiff "must make a prima facie showing, based on its own pleadings, affidavits and supporting materials, which justifies disregard of the corporate form." *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 78 (D. Conn. 2012).

The "instrumentality" theory requires a showing of "(a) control in the form of complete domination of finances and policy and business practices, (b) that such control was used to commit fraud or wrong, and (c) that the control and breach of duty must proximately cause the injury complained of." *RBC Bearings, Inc.*, 2007 WL 2727160, at *1 (citing *Zaist v. Olson*, 154 Conn. 563, 573-74 (1967)). However, a finding that a company should be liable for the acts of a separate company that it owns under this "instrumentality" theory is done cautiously and is considered an extraordinary measure by Connecticut courts. *See e.g., Lego A/S*, 886 F.Supp.2d at 79 (holding that under Connecticut law "the corporate veil is pierced only under exceptional circumstances").

Alternatively, under a separate "identity rule," in order to disregard the corporate entity a plaintiff must demonstrate that the common interest and ownership was so prevalent between the parent and subsidiary that "the independence of the corporations had in effect ceased or had never begun, and an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability." *RBC Bearings, Inc.* 2007 WL 2727160, at *1 (citing *Angelo Tomasso, Inc.*, 187 Conn. at 560).

_____

[6] At oral argument Counsel for Plaintiff advanced what he acknowledged was not a legal concept, which he termed a "quasi veil piercing" theory. There is no support in Connecticut law for this "quasi veil piercing" theory.

In support of its argument, Plaintiff notes that although CI is not itself a manufacturer and distributor, it is nonetheless 100% owner of CKP, and provides risk management and market analysis services to CKP. (Martin Decl. ¶¶ 23, 25.) Additionally, on CI's website it advertises itself as a company that not only acquires businesses, but also owns and operates them. (Am. Compl. ¶ 16.) Plaintiff concludes, as evidenced from CI's management of CKP's issues with both the Tylose Powder cease and desist letter and Plaintiff's own correspondence with CKP regarding the DISCO DUST® infringement, that CI manages all issues relating to trademark. As such, Plaintiff argues it is "likely that Defendant CI would have been intimately involved in Defendant CKP's product name choices and the risks and liabilities involved in those choices." (Pl.'s Opp'n at 12.)

These allegations fall short of being sufficient to pierce the corporate veil such that the Court would have personal jurisdiction over CI based upon CKP's intentional tort (trademark infringement). CI is a wholly separate limited liability company from CKP, is located in a different state, and engages in entirely different lines of businesses from CKP. (*See* Martin Decl. ¶¶ 4-14.) Most importantly, CI neither directs nor manages the manufacturing and sales activities of CKP generally, let alone those specific to CKP's disco dust products. (*Id.* ¶ 15-16). Plaintiff's allegations on CI's limited interactions with Plaintiff involving CI's alleged payment to Plaintiff for goods delivered to CKP, Mr. Kenney's provision of risk management services to CKP regarding Tylose and the subsequent Plaintiff-issued credit, and Mr. Kenney's phone call and e-mail to Plaintiff regarding this dispute, even when taken together, do not demonstrate that CI dominates CKP, such that CKP is merely CI's instrument.[7]

---

[7] Indeed, these were all administrative services for which CKP paid CI. (*See* Martin Decl. ¶ 17.) An allegation of merely providing administrative services to a subsidiary is not sufficient to

12

Accordingly, the Court lacks personal jurisdiction over CI under the long-arm statute.

## 2. Due Process – Specific Jurisdiction[8]

The Court need not address whether exercising jurisdiction over a defendant is constitutionally permissible when the Connecticut long-arm statute's requirements are not met. *See Milne v. Catuogno Court Reporting Servs., Inc.*, 239 F.Supp.2d 195, 203 (D. Conn. 2002) (where plaintiff failed to show that long-arm statute reached defendants, jurisdictional inquiry ends). Therefore, the Court does not address due process concerns relating to CI, only CKP.

The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts . . . [T]he nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added and internal quotations and citations omitted). There are two types of personal jurisdiction—general jurisdiction and specific jurisdiction—that satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum state. *Milne*, 239 F.Supp.2d at 203. "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Brown*, 814 F. 3d at 624–25 (stating that specific jurisdiction only exists where plaintiff's injuries arise out of defendant's activities in Connecticut); *see also Daimler*, 134 S. Ct. at 754. This due

---

disregard the corporate entity under the "identity rule." *See Torok v. Proof*, No. CV 90 0113204, 1993 WL 28878, at *1 (Conn. Super. Ct. Feb. 1, 1993).

[8] Here, Plaintiff argues only that the Court has specific jurisdiction and accordingly general jurisdiction is not addressed. (*See* Pl.'s Opp'n at 13-14.)

process test has two components: 1) the "minimum contacts" inquiry; and 2) the "reasonableness" inquiry. *Broadcast Mktg.*, 345 F. Supp. 2d at 1060 (citing *Metro. Life*, 84 F.3d at 567).

### a. Minimum Contacts

First, a court must determine whether the defendant has "minimum contacts" with a forum state. In order to demonstrate "minimum contacts," a plaintiff must demonstrate that its claims arose out of or related to a defendants' conduct in Connecticut, and that the defendant has "purposefully availed" itself of the privileges of doing business in Connecticut. *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86, 91 (D. Conn. 2001) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984)); *Kerman v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242–43 (2d Cir. 1999). "[T]he requisite 'minimum contacts' must be such that [the defendant] can 'reasonably anticipate' being hauled into court in the forum state." *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 495 (D. Conn. 2006) (citing *Burger King*, 471 U.S. at 474). The minimum contacts inquiry rests upon a totality of the circumstances analysis: all of the defendant's contacts within the forum state "must indicate that jurisdiction is proper." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).

Defendants claim that CKP's sales of the disco dust product into Connecticut are insignificant and *de minimus* and that CKP does not control the resale of any disco dust product that may make its way into Connecticut (Martin Decl., ¶ 37). They therefore maintain that CKP does not have the sufficient minimum contacts with Connecticut required for this Court to exercise personal jurisdiction over it. (Def.'s Reply at 3.) On the other hand, Plaintiff argues the harm inflicted by CKP's calculated choice to infringe Plaintiff's DISCO DUST® trademark and subsequently, when discovered, to change to the confusingly similar DISCO GLITTER mark, was aimed at Plaintiff in Connecticut. (Czerczak Aff. ¶¶ 23, 31; Am. Compl. ¶¶ 70-72.)

Defendant requires that businesses or retailers first become customers by registering with it and certifying they are a bona fide business, but its website also includes a search function called "Find a Retailer," where customers who cannot register as a legitimate business can locate previous customers of CKP. (Martin Dec. ¶¶ 34-39.) Plaintiff submits that using that search function produces a list of at least five retailers located in Connecticut. (Ex. F (Find my Retailer Screenshot) to Pl.'s Opp'n [Doc. # 33-7].) Even if no long-term relationship with these retailers can be established, CKP has still admitted to selling both types of accused infringing product directly into the forum. (*Id.* ¶¶ 43-45). Defendant concedes that .6% of its total disco dust product line sales in 2016 were sales directly to customers in Connecticut. (*Id.* ¶ 43.) Moreover, as of March 31, 2017, 1% of the total DISCO GLITTER disco dust product line sales were directly to customers in Connecticut. (*Id.* ¶ 44.)

Although not cited by the parties and not binding on this Court, the reasoning in *Edizone, LLC v. Asia Focus International Group Inc.* supports the conclusion that CKP "purposefully availed itself" sufficiently to expect personal to jurisdiction in this forum. 196 F. Supp. 3d 1222, 1228 (D. Utah 2016). In *Edizone*, less than 1% of the defendant's total sales of the allegedly infringing product were in the forum state. Still, the court found that the sales involved "purposeful activity" by the defendant, AFIG:

> Specifically, AFIG accepted orders it knew were coming from Utah billing addresses, fulfilled these orders by shipping the allegedly infringing product to Utah residences, provided Utah consumers with AFIG's contact information so that they could contact AFIG regarding any issues with their orders, and maintained Utah consumer's contact information in its databases. AFIG engaged in these activities over the course of several years. It can hardly be said that AFIG's contacts with Utah were unintentional or only incidental. While the Utah sales may not have been a large portion of AFIG's overall business, each of the contacts revolved around a sale of the allegedly infringing product out of which [the plaintiff's] claims for patent infringement arise.

*Id.* Similarly, here CKP developed relationships with retailers in Connecticut, and sold its allegedly infringing product to customers located in Connecticut, even if only amounting to a small percentage of its total sales of those products. Accordingly, Plaintiff has alleged facts sufficient to find the existence of minimum contacts between Defendant CKP and Connecticut, such that jurisdiction in this forum is proper, so long as it is also reasonable, as discussed below.[9]

        b. *Reasonableness–i.e., Traditional Notions of Fair Play and Substantial Justice*

Once a court has determined that a defendant has sufficient contacts with the forum state, it must address the second component of the due process inquiry, or the "reasonableness" inquiry, which requires that personal jurisdiction over the defendant must "comport with traditional notions of fair play and substantial justice." *Metro. Life*, 84 F.3d at 573. The burden is on the defendant to prove a "compelling case" that personal jurisdiction is unreasonable under the circumstances. *Metro Life*, 84 F.3d at 568 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In *Asahi Metal Industry Co. v. Superior Court of California*, the Supreme Court articulated a five factor test to determine whether the exercise of personal jurisdiction is reasonable and fair under the circumstances: 1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering

---

[9] Because the Court agrees with Plaintiff's claim that CKP's sales in Connecticut alone suffice to establish minimum contacts, it need not address Plaintiff's additional arguments that CKP's website constitutes "minimum contacts" or that CKP committed an intentional tort in the state, providing grounds for jurisdiction.

substantive social policies. 480 U.S. 102, 113-14 (1987). Many of these factors are also considered in connection with the venue transfer analysis, *infra*.

With regard to the first factor, Defendants argue that because both are non-residents of Connecticut and their respective employees and businesses are located in Ohio and Indiana, litigating in the District of Connecticut poses a significant burden on them and requires two out-of-state parties to travel to Connecticut.[10] In response, Plaintiff argues that Defendants are corporate entities whose employees travel regularly for work, and that while litigation in a foreign forum is inconvenient for any party, it is logically least inconvenient for corporate parties. Defendants offer no specifics regarding their claim of significant burden and the Court concludes that the burden on Defendant here is not unreasonable.

Defendants do not address the second or third factors and in any case, these weigh in favor of retaining jurisdiction. As to Connecticut's interest in adjudicating the case, this factor supports jurisdiction in this forum. Although this case primarily concerns a federal question, Connecticut has an interest in the supplemental claims asserted under Connecticut common law and the Connecticut Fair Trade Practices Act ("CUTPA"). As to the third factor, Plaintiff has a distinct interest in obtaining convenient and effective relief in the forum where it is located.

Defendants argue that the fourth factor shows exercise of jurisdiction in Connecticut is unreasonable because CI and CKP are both located in the Midwest. Defendants do not detail specifically how the most efficient resolution of the controversy would occur through litigation in

_____

[10] Because the Court has determined it lacks jurisdiction over Defendant CI, only CKP would be required to travel.

the Southern District of Ohio or the Northern District of Indiana. The Court views this factor as neutral.

Finally, the parties agree the fifth factor is neutral, as this case predominantly involves a federal question.

Ultimately, Defendants' arguments are insufficient to meet their substantial burden of presenting a "compelling case" of unfairness and the Court finds that exercising personal jurisdiction over the remaining Defendant, CKP, on this record does not offend "traditional notions of fair play and substantial justice." *Metro Life*, 84 F.3d at 568, 573 (citing *Burger King*, 471 U.S. at 477).

### B. Dismissal for Improper Venue is not Appropriate

Section 1391(b)(1) allows an action to be brought "in a judicial district where any defendant resides if all defendants reside in the same State." 28 U.S.C. § 1391(b)(1). Section 1391(c) further clarifies that a defendant corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). "Essentially section 1391(c) equates jurisdiction with venue for corporate defendants." *Broadcast Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1064 (D. Conn. 2004); *Divicino v. Polaris Industries*, 129 F. Supp. 2d 425, 435 (D. Conn. 2001) (citing *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces*, Inc., 779 F. Supp. 335, 337 (S.D.N.Y.1991)); *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 182 (E.D.N.Y. 2004). Defendants concede that if the Court finds it has personal jurisdiction over CKP, venue is also proper. Therefore, because the exercise of personal jurisdiction is appropriate over CKP in the District of Connecticut, the Court will not dismiss the case for improper venue.

### C. Transfer of Venue

Even where venue is proper in one district, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a). According to Defendant, this lawsuit should be transferred to either the Southern District of Ohio or the Northern District of Indiana.[11]

A court applies a two-prong test to determine if the requested transfer is appropriate. *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006). With the first prong, a court must determine if the action could have originally been brought in the transferee district, which the parties do not dispute. *Id.* Under the second prong, courts in the Second Circuit consider the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co. Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (citation omitted). In addition to these factors, a court may also consider "the forum's familiarity with governing law . . . and trial efficiency and the interest of justice, based on the totality of the circumstances." *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 516 (D. Conn. 2011). Finally, the moving party must show that "convenience and justice for all parties demands that the litigation proceed elsewhere." *Jones*, 463 F.Supp.2d at 271, (quoting *Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*, 294 F. Supp. 2d 218, 219 (D. Conn. 2003)). The moving party has the "burden of making out a strong case for transfer." *Filmline*

---

[11] The remaining Defendant, CKP, is an Ohio limited liability company with its principal place of business in Fort Wayne, Indiana.

*(Cross-Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989), quoting *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950).

### 1. Plaintiff's Choice of Forum

All things being equal, the Court gives substantial consideration to the plaintiff's choice of forum, especially in a case where the plaintiff resides in the district where the case was filed. *Deleo v. Zconnexx Corporation*, 2000 U.S. Dist. LEXIS 15712, 2000 WL 1610668 (W.D.N.Y.) (citing *A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 444 (2d Cir.1966); *Stonehenge, Ltd. v. Garcia*, 989 F. Supp. 539, 542 (S.D.N.Y. 1998). Absent compelling circumstances warranting transfer established by the Defendants, Plaintiff's choice of forum should control. *See e.g., H Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, 296 F. Supp. 2d 234, 241 (D. Conn. 2003). However, a plaintiff's choice of forum carries less weight without concrete connection to its chosen district and its choice of forum receives less deference when the loci of operative facts are found in another district. *See Aronstein v. Thompson Creek Metals Co.*, No. 3:14-cv-00201 (MPS), 2015 WL 235186, at *3 (D. Conn. Jan. 16, 2015); *Open Solutions Inc. v. Granite Credit Union*, No. 3:12–CV–1353 (RNC), 2013 WL 5435105, at *4 (D. Conn. Sept. 29, 2013); *Nieves v. Am. Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (plaintiff's choice is given reduced emphasis when "operative facts upon which the litigation is brought bear little material connection to the chosen forum"). As illustrated in the Court's earlier analysis of CKP's minimum contacts with the forum state, Plaintiff alleges facts which are connected to Connecticut and therefore this factor weighs against transfer of venue.

### 2. Loci of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Am. S.S. Owners Mut. Prot. & Indem. Assoc., Inc. v. LaFarge N. Am., Inc.*, 474 F .Supp. 2d 474, 485 (S.D.N.Y. 2007). Along with the location of material witnesses, this factor has a bearing

on where the "center of gravity" of the action rests. *Id.* "In determining the locus of operative facts a court must look to the site of events from which the claim arises." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 440 (E.D.N.Y. 2012) (citation omitted).

Defendants maintain that Plaintiff has not demonstrated how the loci of events relating to CKP's sale of the disco dust product occurred in this District. They note that CKP's production and distribution facility; its corporate offices, employees, and assets; and its sales activities are all located in and generated from the Northern District of Indiana, not Connecticut. (Martin Decl. ¶¶ 9, 11.) Thus they argue that the manufacturing, selling, processing, and shipping of the purportedly infringing disco dust product—are out of CKP's facilities, located in the Northern District of Indiana, making this the locus of operative facts. Plaintiff responds that Defendants' alleged infringement of the DISCO DUST® mark was directed at, and had most of its effects in, Connecticut. Plaintiff points out that Defendants admit that there are customers in Connecticut who have been sold the infringing product, and who, Plaintiff contends, as unwitting consumers of such products, not only suffered harm related to likelihood of confusion, but were also subjected to the possibility of contributorily infringing in the event of resale.

Courts have held in trademark infringement cases that "the locus of operative facts is generally 'the initially chosen forum if acts of infringement, dilution, or unfair competition occurred in that forum,' or 'the location of consumer confusion.'" *YLD Ltd. v. Node Firm, LLC*, No. 15-CV-0855 (JPO), 2016 WL 183564, at *3 (S.D.N.Y. Jan. 14, 2016) (citing *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 20–21 (S.D.N.Y. 2012)). Accordingly, many courts have concluded that "that the initially chosen forum is the locus of operative facts if there have been sales in that district, even in cases in which sales of an allegedly infringing product have been made in other districts." *See CYI, Inc.*, 913 F. Supp. 2d 16 at 19 (citing cases).

However, several courts have questioned this rule, finding that mere in-district sales are not sufficient to justify a finding that the locus of operative facts is in the initially chosen forum. *See id.* (citing *Mola, Inc. v. Kacey Enterprises, LLC*, No. 10-CV-1045S, 2011 WL 3667505, at *9 (W.D.N.Y. Aug. 21, 2011) (holding that where a party's products are sold in many states, "sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." (quotation marks omitted)). Such courts have found that the location where the allegedly infringing product was designed and developed can be a relevant consideration. *Id.; see also Accantia Grp. Holdings v. Food Mkt. Merch., Inc.*, 908 F. Supp. 2d 439, 441–42 (S.D.N.Y. 2012).

Here, Plaintiff is a resident of Connecticut, and a small percentage of the product's overall sales were made to customers in Connecticut. In contrast, the production, marketing and sales are located in and generated from the Northern District of Indiana. However, none of these facts weigh significantly in favor of one side or the other, leaving this factor largely neutral. *See e.g., Pilevesky v. SunTrust Bank*, 2010 WL 4879006, at *3–4, 2010 U.S. Dist. LEXIS 124308, at *10–11 (E.D.N.Y. Nov. 22, 2010) (explaining that because there were relevant facts and evidence in more than one district, the locus of operative facts weighed only slightly in favor of transfer, if at all.); *Pecorino*, 934 F. Supp. 2d at 441 (finding that both the Southern District of Florida and Eastern District of New York were loci of operative facts and therefore that the factor was neutral.)

### 3. Convenience of the Parties and Witnesses

Defendant argues if the lawsuit is venued in the District of Connecticut, both Defendants and many of their witnesses will be required to travel from Ohio and Indiana to Connecticut. However, if the lawsuit were venued in the Southern District of Ohio or Northern District of Indiana, Plaintiff and its witnesses would be required to travel to Ohio, but Defendants' travel

between Indiana and Ohio would be considerably more convenient than having to travel to Connecticut.

Plaintiff responds that if the lawsuit were to be transferred to the Southern District of Ohio or the Northern District of Indiana, Plaintiff and its witnesses would be at least as inconvenienced as Defendants allege they are, and for largely the same reasons. "In a motion to transfer, a court does not seek merely to transfer inconvenience from one party to the other." *Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc.*, 821 F. Supp. 848, 850 (D. Conn. 1993). The crux of Defendants' argument with regard to the convenience of parties is that the Defendants would find it convenient to travel between either the Southern District of Ohio or the Northern District of Indiana, but ignore that it would be, at least, much less convenient for Plaintiff and its witnesses to travel to either of Defendants' proposed jurisdictions. This argument is largely moot because only one Defendant remains and therefore in either case one party and its witnesses will be required to travel between the Midwest and Connecticut. As such, "a venue transfer here would do nothing more than to shift [the] inconvenience to [P]laintiff." *A Slice of Pie Prods. v. Wayans Bros. Entertainment*, 392 F. Supp. 2d 297, 308 (D. Conn. 2005). Thus, this factor weighs against transfer.

### 4. Location of Evidence

With respect to the relative ease of access to sources of proof, "modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Charter Oak Fire Ins. Co.*, 294 F. Supp. 2d, at 221. Even if Defendants could allege that all of the documents relative to this lawsuit were located in either the Southern District of Ohio or the Northern District of Indiana, Defendants still cannot show that retaining this case in the District of Connecticut would hinder access to the sources of proof. *See A Slice of Pie Prods.*, 392 F. Supp. 2d at 308. Accordingly, this factor is neutral.

### 5. Familiarity with Governing Law

As to the forum's familiarity with the governing law, it should be borne in mind that this case is, at bottom, a trademark infringement and unfair competition case. The District of Connecticut is familiar with and has the authority to apply the Lanham Act to the facts of this case. Further, the forum state has a greater interest than Defendants' proposed venues in applying both its common law of unfair competition and its Unfair Trade Practices Act. Defendants have not established that either Ohio or Indiana law should apply to Plaintiff's common law claims. Therefore, this factor weighs against transfer.

### 6. Relative Means of the Parties

Defendants assert that all parties "have the relative means to participate in this lawsuit," (Mem. Supp. Mot. to Dismiss, p. 26), but Plaintiff contends that it has lesser ability to bear the burden of litigating this lawsuit in a foreign jurisdiction than Defendants because it is a small entity with one principal and without the financial resources of an investment company like CI, which is no longer in the case. (*See* Pl.'s Opp'n at 26.) Neither party offers any evidence of their relative means and thus the Court finds this factor weighs neither in favor nor against transfer.

### 7. Trial Efficiency or Interests of Justice

Defendants make no argument that trial efficiency or the interests of justice warrant a transfer of venue. There are no grounds upon which to find that transfer of venue "would . . . protect against wasted time, energy, or money, . . . [or] protect the litigants, witnesses and public against unnecessary inconvenience and expense" and consequently the trial efficiency and interests

of justice factors weigh against transfer. *See Roller Bearing Co. of America v. American Software*, 570 F.Supp.2d 376, 390 (D. Conn. 2008).[12]

### 8. The Court Will not Transfer Venue

In sum, Plaintiff's choice of forum will be given deference because Plaintiff resides in this district and its claims are sufficiently related to conduct within Connecticut given that the allegedly infringing products were sold in the state. *Accantia Grp. Holdings v. Food Mkt. Merch., Inc.*, 908 F. Supp. 2d 439, 441–42 (S.D.N.Y. 2012) (the facts are "sufficient to demonstrate a material connection to the initial forum for purposes of establishing deference to [Plainitff's] forum choice." (internal quotation marks omitted)). Additionally, the remaining factors are either neutral or weigh against transfer. Accordingly, Defendant has not demonstrated a "strong case for transfer" and the Court denies its Motion for Transfer of Venue. *See Filmline*, 865 F.2d at 521.

## III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendant CI is dismissed for lack of personal jurisdiction. The Court has personal jurisdiction over Defendant CKP, and the case will not be dismissed for improper venue nor transferred to either of Defendants' proposed venues.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.
Dated at New Haven, Connecticut this 1st day of March 2018.

---

[12] The parties agree the District of Connecticut, the Southern District of Ohio, and the Northern District of Indiana all have nationwide subpoena power to compel testimony for use at trial from witnesses and therefore that this factor is neutral.